1

2

3

4

5

6

7

8                   UNITED STATES  DISTRICT COURT

9                     Northern District of California

10                          Oakland Division

11   PATERNO Y. MELEGRITO,                    No. C 11-01765 LB

12                  Plaintiff,          **ORDER DISMISSING PLAINTIFF'S**
                                        **COMPLAINT WITH LEAVE TO**
13         v.                           **AMEND**

14   CITIMORTGAGE INC., CR TITLE
     SERVICES INC., and DOES 1-50       **[ECF No. 4]**
15                  Defendants.
     _____/
16

17                            **I.  INTRODUCTION**

18        Plaintiff Peterno Melegrito filed suit against CitiMortgage Inc., CR Title Services Inc., and Does

19   1-50 alleging that they violated various laws during the origination and servicing of a mortgage on

20   Mr. Melegrito's residence.  Complaint, ECF No. 1 at 4-29.[1]  CitiMortgage and CR Title removed the

21   case from state court and filed a motion to dismiss Mr. Melegrito's complaint.  Notice of Removal,

22   ECF No. 1 at 1-2; Motion to Dismiss, ECF No. 4.  All parties have consented to this court's

23   jurisdiction.  *See* ECF Nos. 6 & 7.  Pursuant to Civil Local Rule 7–1(b), the court finds this matter

24   suitable for decision without oral argument.

25        Mr. Melegrito's complaint fails to state a claim that is plausible on its face.  Therefore, the court

26

27   ─────────────────

28        [1] Citations are to the Electronic Case File ("ECF") with pin cites to the electronic page
     number at the top of the document, not the pages at the bottom.

UNITED STATES DISTRICT COURT
For the Northern District of California

UNITED STATES DISTRICT COURT
For the Northern District of California

1  dismisses the complaint and gives Mr. Melegrito an opportunity to cure the defects that the court

2  outlines below.

3  ## II. BACKGROUND

4  Mr. Melegrito's complaint appears to be almost entirely boilerplate with the exception of the

5  "Special Allegations" section and a few portions of the articulated claims.  *See generally* Complaint,

6  ECF No. 1.  Mr. Kenneth Graham, Mr. Melegrito's attorney, has used nearly identical complaints in

7  a host of cases in this district that assert basically the same nine to thirteen claims.[2]  The relevant

8  facts, taken from the complaint and Defendants' request for judicial notice, are as follows.[3]

9  **A.  Substantive Facts**

10  In September 2007, CitiMortgage issued a primary loan to Mr. Melegrito for $560,000 to

11  purchase a property at 1137 Paloma Avenue #G, Burlingame, California.  Complaint, ECF No. 1 at

12

13  _____

14  [2] *See, e.g., Corazon v. Aurora Loan Serv.*, No. 11-00542 SC, ECF No. 1 at 11-35; *De Jose v. EMC Mortg. Corp.*, No. 11-0139 JCS, ECF No. 1 at 5-25; *Nunez v. Bank of Am., N.A.*, No. C 11-0081 MMC, ECF No. 1 at 8-23, ECF No. 13 at 1-21 (first amended complaint); *Fernandez v. GMAC Mortgage, LLC*, No. C 11-2365 HRL, ECF No. 1-1 at 6-30.  The complaint in *Corazon*, for example, is almost a word-for-word copy of the complaint Mr. Melegrito filed in this case, except for the "Specific Allegations" section and a few other areas that directly apply to the facts in this case.

18  [3] Defendants request that the court take judicial notice of the following documents: (1) a Deed of Trust recorded in the San Mateo County Recorder's Office on September 21, 2007, as Document Number 2007-140309; (2) a Notice of Default and Election to Sell Under Deed of Trust recorded in the San Mateo County Recorder's Office on November 10, 2010 as Document Number 2010-135103; (3) a Notice of Trustee's Sale recorded in the San Mateo County Recorder's Office on February 17, 2011 as Document Number 20011-020053; and (4) the Fannie Mae Historical Conventional Loan Limits.  Request for Judicial Notice, ECF No. 4-2.  The court may take judicial notice of matters of public record without converting a motion to dismiss into a motion for summary judgment.  *Lee v. City of Los Angeles*, 250 F.3d 668, 689 (9th Cir. 2001).  Because each of the first three exhibits are public records, the court may properly take judicial notice of the undisputable facts contained in the documents.  *See Hotel Employees & Rest. Employees Local 2 v. Vista Inn Mgmt. Co.*, 393 F. Supp. 2d 972, 978 (N.D. Cal. 2005); Fed. R. Evid. 201(b).  Mr. Melegrito did not object to the Fannie Mae Historical Conventional Loan Limits and the information contained therein is capable of "accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned."  Fed. R. Evid. 201(b).  As such, the court takes judicial notice of that document as well.  *See Alvara v. Aurora Loan Services, Inc.*, No. C 09-1512 SC, 2009 WL 1689640, at *1 n.3 (N.D. Cal. June 16, 2009) (taking judicial notice of this exact document which included figures up until 2009).

¶¶ 2, 32; Deed of Trust, ECF No. 4-2 at 4-28, Ex. A.  The loan is a 30-year adjustable rate mortgage with a fixed interest rate of 6.25% for the first five years.  Complaint, ECF No. 1, ¶ 32.  The loan is secured by a mortgage on the 1137 Paloma Avenue property.  *Id.*, ¶ 13.  Mr. Melegrito believes that the secured property has a current fair market value of $622,500 and that the loan has an outstanding balance of $600,000.  *Id.*

Based on the initial interest rate of 6.25%, Mr. Melegrito made monthly payments on the mortgage of approximately $2,900.  *Id.*, ¶ 34.  In May 2008, Mr. Melegrito began having difficulties making these monthly payments because of "financial and economic hardship."  *Id.*, ¶ 35.  In August 2008, he contacted unspecified defendants seeking a loan modification.[4]  *Id.*, ¶ 36.  These unspecified defendants told Mr. Melegrito that he did not qualify for a loan modification because he was not delinquent on his monthly mortgage payments.  *Id.*  Nevertheless, Mr. Melegrito wrote several letters to unspecified defendants requesting a loan modification because he continued to struggle to make the monthly mortgage payments.  *Id.*, ¶ 37.

In September 2008, unspecified defendants offered Mr. Melegrito a payment plan whereby he could make reduced monthly payments for one year.  *Id.*, ¶ 38.  According to Mr. Melegrito, he made the payments and these unspecified defendants accepted them.  *Id.*

Unspecified defendants offered to place Mr. Melegrito on the Home Affordable Modification Trial Period Plan in November 2009.  *Id.*, ¶ 39.  According to the plan, if Mr. Melegrito complied with its terms, unspecified defendants would offer him a permanent loan modification.  *Id.*  The unspecified defendants sent Mr. Melegrito two different trial plans that quoted different monthly payment amounts.  *Id.*, ¶ 40.  When he contacted the unspecified defendants to clear this discrepancy, they orally told him to ignore both of the agreements and that his payments under the trial plan were $1,480 per month.  *Id.*, ¶ 41.  Mr. Melegrito made payments under the plan from November 2009 to January 2010, and unspecified defendants accepted the payments.  *Id.*, ¶ 42.

Mr. Melegrito contacted unspecified defendants in January 2010 to ask when he would receive a

_____

[4] Throughout his complaint, Mr. Melegrito refers to "the Defendant" or "the Defendants," but he does not specify which entities or individuals to whom he is referring.  As a result, the court will refer to these entities as "unspecified defendants."

**UNITED STATES DISTRICT COURT**
**For the Northern District of California**

permanent loan modification. *Id.*, ¶ 43. Unspecified defendants informed Mr. Melegrito that they had not yet reviewed his documents but that he should continue to make payments under the plan. *Id.* Mr. Melegrito contacted the unspecified defendants various times over the following months and each time, they told him that they had not yet reviewed his paperwork and to continue making payments under the plan. *Id.*, ¶ 44.

In April 2010, unspecified defendants denied Mr. Melegrito's application for a permanent loan modification claiming that he had not made all of the payments under the trial plan. *Id.*, ¶ 45. Mr. Melegrito contacted them "immediately" to tell them that he had, in fact, made the trial plan payments. *Id.* He provided the unspecified defendants with copies of checks he used to make the payments but they refused to provide him with a permanent loan modification. *Id.*, ¶ 46.

Mr. Melegrito stopped making monthly payments in October 2010. *Id.*, ¶ 47. CR Title filed a notice of default on November 10, 2010. Default, ECF No. 4-2 at 30-32, Ex. B. Along with the notice of default, CR Title filed a declaration stating that it had contacted Mr. Melegrito on September 22, 2010 to discuss his financial situation and options for avoiding foreclosure. *Id.* at 32. According to the declaration, during the conversation, CR Title informed him that he had a right to schedule a "follow-up meeting to occur within 14 days." *Id.* It also provided Mr. Melegrito with a toll-free telephone number of a HUD-certified housing counseling agency. *Id.*

CR Title issued a notice of trustee's sale on February 17, 2011. Notice of Trustee's Sale, ECF No. 4-2 at 34-35, Ex. C. According to the notice, the trustee's sale was scheduled for March 15, 2011. *Id.* at 34. The parties do not indicate whether the trustee's sale has occurred.

Mr. Melegrito sought legal advice from Mr. Graham in February 2010. Complaint, ECF No. 1, ¶ 53. At that time, Mr. Graham discussed with him "legal options." *Id.*

**B. Procedural Facts**

On March 8, 2011, Mr. Melegrito filed suit against CitiMortgage, CR Title, and Does 1-50 asserting the following claims: (1) violation of the Truth in Lending Act (TILA); (2) violations of California Business and Professions Code §§ 17200, *et seq.*; (3) fraud; (4) breach of implied covenant of good faith and fair dealing; (5) breach of fiduciary duty; (6) breach of loan contracts; (7) violation of California Civil Code § 2923.5; (8) promissory estoppel; (9) negligence; (10) predatory

1  lending in violation of California Financial Code §§ 49720-4979.8; (11) misrepresentation; and (12)

2  violation of California Civil Code § 1632.  Complaint, ECF No. 1 at 4-29.  CitiMortgage and CR

3  Title removed the case on April 11, 2011 and filed a motion to dismiss Mr. Melegrito's complaint on

4  April 18, 2011.  Notice of Removal, ECF No. 1 at 1-2; Motion to Dismiss, ECF No. 4.

5  ### III.  LEGAL STANDARD

6      Rule 8(a) requires that a complaint contain a "short and plain statement of the claim showing that

7  the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  A complaint must therefore provide a

8  defendant with "fair notice" of the claims against it and the grounds for relief.  *See Bell Atlantic*

9  *Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quotation and citation omitted).

10      A court may dismiss a complaint under Federal Rule of Civil Procedure 12(b)(6) when it does

11  not contain enough facts to state a claim to relief that is plausible on its face.  *See Twombly*, 550

12  U.S. at 570.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the

13  court to draw the reasonable inference that the defendant is liable for the misconduct alleged."

14  *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009).  "The plausibility standard is not akin to a

15  'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted

16  unlawfully."  *Id*. (quoting *Twombly*, 550 U.S. at 557.)  "While a complaint attacked by a Rule

17  12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to

18  provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a

19  formulaic recitation of the elements of a cause of action will not do.  Factual allegations must be

20  enough to raise a right to relief above the speculative level."  *Twombly,* 550 U.S. at 555 (internal

21  citations and parentheticals omitted).

22      In considering a motion to dismiss, a court must accept all of the plaintiff's allegations as true

23  and construe them in the light most favorable to the plaintiff.  *See id*. at 550; *Erickson v. Pardus*, 551

24  U.S. 89, 93-94 (2007); *Vasquez v. Los Angeles County*, 487 F.3d 1246, 1249 (9th Cir. 2007).

25      In reviewing a motion to dismiss, courts may consider documents attached to the complaint.

26  *Parks School of Business, Inc. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995) (citation omitted).

27      If the court dismisses the complaint, it should grant leave to amend even if no request to amend

28  is made "unless it determines that the pleading could not possibly be cured by the allegation of other

1  facts." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (quoting *Cook, Perkiss and Liehe, Inc. v.*

2  *Northern California Collection Serv. Inc.*, 911 F.2d 242, 247 (9th Cir. 1990)).

3  ## IV. DISCUSSION

4  Conclusory allegations permeate Mr. Melegrito's complaint.  First, some of his claims are barred

5  by various statutes of limitations and Mr. Melegrito has pleaded no facts to show that tolling is

6  appropriate.  Second, Mr. Melegrito fails to differentiate between CitiMortgage, CR Title, and Does

7  1-50 in any of his 12 claims.  Third, even if Mr. Melegrito differentiated between defendants, many

8  of his claims are merely recitations of the elements of the claims with little to no factual support.

9  These deficiencies are not new.  At least four separate courts in the Northern District have

10  dismissed complaints filed by Mr. Graham that are largely identical to the complaint he filed in this

11  case.  *See Corazon v. Aurora Loan Serv., LLC*, No. C 11–00542 SC, 2011 WL 1740099, at *1 (N.D.

12  Cal. May 5, 2011); *De Jose v. EMC Mort. Corp.*, No. C 11–00139 JCS, 2011 WL 1539656, at *1

13  (N.D. Cal. Apr. 18, 2011); *Nunez v. Bank of Am., N.A.*, No. C 11-0081 MMC, 2011 WL 1058545, at

14  *1 (N.D. Cal. Mar. 22, 2011); *Punzalan v. EMC Mortg. Corp.*, No. C11–00936 HRL, 2011 WL

15  1838778, at *1 (N.D. Cal. May 13, 2011).  After dismissing the complaint in *Corazon*, Judge Conti

16  gave Mr. Graham the following warning:

17  [T]he Court reminds Plaintiff that Federal Rule of Civil Procedure 11(b)(3) requires the
   signatory to a complaint to certify that "the allegations and other factual contentions have

18  evidentiary support or, if specifically so identified, are likely to have evidentiary support after a
   reasonable opportunity for further investigation or discovery." Fed.R.Civ.P. 11(b)(3).  This

19  certification requirement imposes "an affirmative duty to conduct a reasonable inquiry into the
   facts and the law before filing." *Business Guides, Inc. v. Chromatic Communications Enter.*,

20  498 U.S. 533, 111 S.Ct. 922, 112 L.Ed.2d 1140 (1991) (upholding sanctions against party for
   filing complaint of copyright infringement with no factual basis).

21

22  *See Corazon*, 2011 WL 1740099, at *5.  Thus, Mr. Graham is on notice that he may not file template

23  complaints that contain only a few pages of facts specific to that particular plaintiff while alleging

24  the same nine to thirteen claims with boilerplate language.

25  Mr. Melegrito's opposition to CitiMortgage and CR Title's motion to dismiss is similarly

26  superficial.  It contains boilerplate arguments that parrot the same conclusory allegations from the

27  complaint.  The only difference between the two is that Mr. Melegrito's complaint refers to

28  unspecified *defendants* while his opposition refers only to CitiMortgage as the *defendant*.  *Compare*

UNITED STATES DISTRICT COURT
For the Northern District of California

1    Complaint, ECF No. 1 at 4-29 *with* Opposition, ECF No. 8 at 1-20.

2        Notwithstanding the general and fatal deficiencies that run throughout the complaint, the court

3    will provide Mr. Melegrito with some guidance to assist him in drafting an amended complaint.  It is

4    not the court's responsibility, however, to decipher which defendants Mr. Melegrito asserts are

5    liable for which claims and which facts support those claims.  In his first amended complaint, the

6    specific allegations that are applicable to this case must "allow[] the court to draw the reasonable

7    inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 129 S.Ct. at 1949.  With

8    this in mind, the court addresses the shortcomings in Mr. Melegrito's complaint.

9    **A.  Statute of Limitations**

10       **1.  TILA**

11       Mr. Melegrito claims that during the formation of the original loan, unspecified defendants

12   assured him that he was qualified for the loan but did not clearly inform him of the risks of the loan.

13   Complaint, ECF No. 1 at 13, ¶ 54-58.  He signed the loan in September 2007 and filed suit on March

14   8, 2011.  *Id.* at 10, ¶ 32.  It appears that Mr. Melegrito seeks both rescission and damages from the

15   alleged TILA violations.  *Id.*, ¶¶ 8, 10.

16       "Under the Truth in Lending Act, [] 15 U.S.C. § 1601 *et seq.*, when a loan made in a consumer

17   credit transaction is secured by the borrower's principal dwelling, the borrower may rescind the loan

18   agreement if the lender fails to deliver certain forms or to disclose important terms accurately."

19   *Beach v. Ocwen Fed. Bank*, 523 U.S. 410, 411 (1998) (citing 15 U.S.C. § 1635).[5]  Section 1635(a)

20

21       _____

22           [5]  In *Beach*, the Court addressed whether a borrower may assert his right to rescind as an
     affirmative defense in a collection action brought by the lender more than three years after the
23   consummation of the transaction.  523 U.S. at 411-12.  The borrowers in that case acknowledged
     that their right to institute an independent proceeding for rescission under § 1635 lapsed three years
24   after they closed on their loan with the bank, but they argued that the restriction to three years in §
     1635(f) is a statute of limitation governing only the institution of a lawsuit, but had no effect when a
25   borrower claimed a right of rescission as a defense in recoupment to a collection action by the
     lender.  *Id.* at 415.  Examining § 1635(f), the Court reasoned that the language "takes us beyond any
26   question whether it limits more than the time for bringing a suit by governing the life of the
     underlying right as well."  *Id.* at 417.  It noted that the subsection expressly addresses whether the
27   "right to rescission" under TILA expires.  *Id.*  The Court indicated that by addressing the "right's"
     duration, it "render[ed] any limitation on the time for seeking a remedy superfluous."  *Id.*  Moreover,
28

     **UNITED STATES DISTRICT COURT**
     **For the Northern District of California**

C 11-01765 LB
ORDER DISMISSING COMPLAINT

1   provides that a borrower initially has three days following the consummation of the transaction or

2   the delivery of the disclosure forms required under § 1635 to notify the creditor of his intent to

3   rescind.  15 U.S.C. § 1635(a).  However, if the creditor either fails to provide notice of the

4   borrower's right of rescission, or fails to make a material disclosure, the three-day period is extended

5   to three years.  *See Miguel v. Country Funding Corp.*, 309 F.3d 1161, 1163 (9th Cir. 2002) (citing 15

6   U.S.C. § 1635(f)); 12 C.F.R. § 226.23(a)(3)).  Specifically, § 1635(f) of TILA provides in pertinent

7   part:

8   > An obligor's right of rescission shall expire three years after the date of
    > consummation of the transaction or upon the sale of the property, whichever occurs

9   > first, notwithstanding the fact that the information and forms required under this
    > section or any other disclosures required under this part have not been delivered to

10  > the obligor.

11  15 U.S.C. § 1635(f).  A plaintiff need not file a complaint seeking rescission within the three-year

12  period, but he must attempt to rescind the contract within that period.  *See Briosos v. Wells Fargo*

13  *Bank*, 737 F. Supp. 2d 1018, 1023-27 (N.D. Cal. 2010).

14      When a plaintiff seeks damages under TILA, he must file a complaint "within one year from the

15  date of the occurrence of the violation."  *See* 15 U.S.C. § 1640(e); *Briosos*, 737 F. Supp. 2d at 1023-

16  27 (holding that a lawsuit filed within one year of a defendant's rejection of a request for rescission

17  was within § 1640(e)'s one-year period).

18      Here, Mr. Melegrito filed his complaint more than three years after the date of the consummation

19  of the transaction.  Therefore, his TILA claim is time-barred unless tolling of the statute of

20  limitations is warranted.  Tolling is appropriate if despite exercising reasonable diligence, a plaintiff

21  could not have discovered the alleged wrongdoing.  *Meyer v. Ameriquest Mortg. Co.*, 342 F.3d 899,

22  902 (9th Cir. 2003).  Mr. Melegrito argues that tolling of the statute of limitations is warranted

23

24  the Court contrasted this language with that of § 1640(e), which provided that "the 1-year limit on

25  actions for damages 'does not bar a person from asserting a violation of this subchapter in an action
    to collect the debt which was brought more than one year from the date of the occurrence of the

26  violation as a matter of defense by recoupment or set-off in such action, except as otherwise

27  provided by State law.'"  *Id* at 416-18 (quoting 15 U.S.C. § 1640(e)).  The Court thus concluded that
    Congress intended to foreclose the federal right to rescind provided under TILA, defensively or

28  otherwise, after the 3-year period of § 1635(f) has run.  *Id.* at 419.

UNITED STATES DISTRICT COURT
For the Northern District of California

UNITED STATES DISTRICT COURT
For the Northern District of California

1  because he sought legal advice from Mr. Graham in February 2010.  Complaint, ECF No. 1, ¶ 53;

2  Opposition, ECF No. 8 at 10-11.  This argument is unavailing.  As previous courts have noted with

3  respect to this specific argument, regardless of when he sought legal advice or when he actually

4  discovered the violation, Mr. Melegrito pleaded no facts that demonstrate that with reasonable

5  diligence in reading the terms of the mortgage agreement he could not have discovered the alleged

6  TILA violations.  *See Nunez*, 2011 WL 1058545 at *2; *see also Meyer*, 342 F.3d at 902 (holding that

7  the plaintiffs' TILA claim was time-barred because they "were in full possession of all information

8  relevant to the discovery of a TILA violation and a § 1640(a) damages claim on the day the loan

9  papers were signed.").  Therefore, Mr. Melegrito's TILA claim is dismissed.  Because Mr. Melegrito

10 may plead facts that demonstrate that equitable tolling of the statute of limitations is appropriate, the

11 court grants him leave to amend.

12     **2. Fraud**

13     For fraud claims, a plaintiff must file a complaint within three years of the date upon which he

14 knew of the facts constituting the fraud.  *See* Cal. Code Civ. P. § 338(d).  A plaintiff asserting a

15 fraud claim must "specifically plead facts to show (1) the time and manner of discovery and (2) the

16 inability to have made earlier discovery despite reasonable diligence."  *See Fox v. Ethicon*

17 *Endo-Surgery, Inc.*, 35 Cal. 4th 797, 808 (2005).  Mr. Melegrito signed the loan documents in

18 September 2007 and filed his complaint in March 2011.  Therefore, to the extent that his fraud claim

19 relies on actions by unspecified defendants connected to the formation of the original loan, it is time-

20 barred.  He has pleaded no facts showing his inability to discover the fraud despite his due diligence.

21 This claim is dismissed with leave to amend.

22 **B.  Failure to State a Claim**

23     **1. Failure to Differentiate Between Defendants**

24     As the court noted above, throughout his complaint, Mr. Melegrito fails to differentiate which

25 defendants he alleges are subject to which claims.  Under Rule 8(a), grouping multiple defendants

26 together in a broad allegation is insufficient to provide the defendants with fair notice of the claims

27 against them and the grounds for relief.  *See, e.g., Corazon*, 2011 WL 1740099 at *4 (dismissing a

28 complaint filed by Mr. Graham that was nearly identical to Mr. Melegrito's complaint); *In re Sagent*

UNITED STATES DISTRICT COURT
For the Northern District of California

1    *Technology, Inc.*, 278 F. Supp. 2d 1079, 1094-95 (N.D. Cal. 2003).

2    Here, Mr. Melegrito alleges that all defendants are liable for all of the claims.  However, certain

3    claims appear to pertain only to the mortgage broker and the origination of the loan (e.g. breach of

4    fiduciary duty and predatory lending) while others involve the servicing of the loan (e.g. promissory

5    estoppel).  Complaint, ECF No. 1 at 4-29.  CitiMortgage and CR Title should not have guess as to

6    which claims they are subject.  *See Corazon*, 2011 WL 1740099 at *4.

7    Mr. Melegrito's undifferentiated pleading is troubling in the context of his fraud allegations.

8    When a plaintiff alleges fraud, Rule 9(b) requires that he "state with particularity the circumstances

9    constituting fraud . . . ."  Fed. R. Civ. P. 9(b).  Thus, a plaintiff must differentiate his allegations

10   when suing more than one defendant.  *See Destfino v. Reiswig*, 630 F.3d 952, 958 (9ᵗʰ Cir. 2011)

11   (citations and quotation omitted).  Here, within Mr. Melegrito's fraud claim, he alternately refers to

12   "the Defendants" and "the Defendant" within the same claim.  Complaint, ECF No. 1 at 15, ¶¶ 64-81

13   (". . . the Defendants told the Plaintiff . . . . The Defendant knew that these statements were false.").

14   This fails to provide the relevant defendant or defendants with fair notice of the claims to which they

15   are subject.

16   In sum, Mr. Melegrito cannot indiscriminately plead claims against multiple defendants without

17   specifying which defendants committed the alleged wrongful acts.  As a result, Mr. Melegrito's

18   complaint is dismissed.  If he wishes to file a first amended complaint, Mr. Melegrito must specify

19   which defendants he alleges are subject to which claims.  This analysis applies to claims one through

20   nine and eleven through twelve which are dismissed with leave to amend.

21   **2.  Failure to State Plausible Claims**

22   The court addresses just a few of the pleading deficiencies in this section related to stating a

23   plausible claim.  It is Mr. Melegrito's duty to plead sufficient facts to make his claims plausible.

24       *a.  Claim One: TILA*

25   When a plaintiff alleges a violation of TILA, he must also plead sufficient facts to render

26   plausible his ability to tender.  *See Briosos*, 737 F. Supp. 2d at 1029.  This is important where, as

27   here, "the sole basis for the Court's jurisdiction is rooted in Plaintiff's TILA claim."  *Id.*  In his

28   complaint, Mr. Melegrito has failed to plead any facts regarding his ability to tender.  In his

**UNITED STATES DISTRICT COURT**
**For the Northern District of California**

1   opposition, Mr. Melegrito argues that he has shown that he is willing to tender the proper amount if

2   "the Defendant" agrees to a reasonable loan modification.  This is insufficient, particularly because

3   Mr. Melegrito never pleaded this fact in his complaint.  If he elects to file an amended complaint,

4   Mr. Melegrito must plead sufficient facts to support his ability to tender.

5          *b.  Claim Two: Violations of Business and Professions Code § 17200, et. seq.*

6          California Business & Professions Code § 17200, also known as California's Unfair Competition

7   Law (UCL), prohibits "any unlawful, unfair or fraudulent" business practices.  Cal. Bus. & Prof.

8   Code § 17200.  "Since section 17200 is [written] in the disjunctive, it establishes three separate

9   types of unfair competition.  The statute prohibits practices that are either 'unfair' or 'unlawful,' or

10  'fraudulent.'"  *Pastoria v. Nationwide Ins.*, 112 Cal. App. 4th 1490, 1496 (2003); *see also Cel-Tech*

11  *Communications, Inc. v. Los Angeles Cellular Tel. Co.*, 20 Cal. 4th 163, 180 (1999).  To support a

12  claim for a violation of the UCL, a plaintiff cannot simply rely on general common law principles.

13  *Textron Fin. Corp. v. Nat'l Union Fire Ins. Co. of Pittsburgh*, 118 Cal. App. 4th 1061, 1072 (2004).

14         Any individual who has "has suffered injury in fact and has lost money or property as a result of

15  the unfair competition" may initiate suit.  Cal. Bus. & Prof. Code § 17204.  To have standing, a

16  plaintiff must sufficiently allege that (1) he has "lost 'money or property' sufficient to constitute an

17  'injury in fact' under Article III of the Constitution" and (2) there is a "causal connection" between

18  the defendant's alleged UCL violation and the plaintiff's injury in fact.  *See Rubio v. Capital One*

19  *Bank*, 613 F.3d 1195, 1203-04 (9th Cir. 2010) (citations omitted).

20         Mr. Melegrito alleges that as a result of unspecified defendants' UCL violations, he paid "higher

21  interest rates and higher payments than they [sic] would have otherwise."  Complaint, ECF No. 1 at

22  ¶ 63.  Even assuming this general statement sufficiently alleges a loss of money or property, Mr.

23  Melegrito fails to adequately plead a causal connection between the UCL violations and the injury in

24  fact.  He appears to direct the allegations in this claim not at CitiMortgage or CR Title who are

25  defendants in this suit, but rather at the insurance broker who is not a party to this suit.  As stated

26  below (*see* Section 2(d)), CitiMortgage and CR Title are not liable for the actions of the mortgage

27  broker, and Mr. Melegrito has provided no authority to support his claim that they are liable.  As a

28  result, he alleges no facts that would enable the court to reasonably infer a causal connection

C 11-01765 LB
ORDER DISMISSING COMPLAINT

**UNITED STATES DISTRICT COURT**
For the Northern District of California

1  between CitiMortgage's alleged UCL violations or CR Title's alleged UCL violations and Mr.

2  Melegrito's loss of money or property.

3      Mr. Melegrito also fails to sufficiently plead substantive claims under the UCL.  Because he fails

4  to specify whether he is alleging violations of the UCL based on unlawful, unfair, or fraudulent

5  practices, the court will address each of these theories in turn.

6          *i.  Unlawful Practices*

7      "The 'unlawful' practices prohibited by section 17200 are any practices forbidden by law, be it

8  civil or criminal, federal, state, or municipal, statutory, regulatory, or court-made." *Saunders v.*

9  *Superior Ct.*, 27 Cal. App. 4th 832, 838-39 (1994).  Thus, an unlawful business practices claim under

10  section 17200 "'borrows' violations of other laws and treats them as unlawful practices

11  independently actionable under section 17200." *Id*.  Accordingly, a defendant "cannot be liable

12  under § 17200 for committing unlawful business practices without having violated another law."

13  *Ingles v. Westwood One Broadcasting, Servs., Inc.*, 129 Cal. App. 4th 1050, 1060 (2005).

14      Here, Mr. Melegrito fails not only to specify which defendant or defendants engaged in the

15  alleged violation, but also which law CitiMortgage or CR Title violated.  He claims that unspecified

16  defendants made and caused the mortgage broker to make "misleading statements" that caused Mr.

17  Melegrito "damage in an amount to be determined at trial."  Complaint, ECF No. 1 at ¶ 62.  It is

18  unclear exactly which law these "misleading statements" violated and it is not CitiMortgage or CR

19  Title's job to decipher which law Mr. Melegrito relies on to assert his UCL claim.  To the extent that

20  Mr. Melegrito alleges violations of the UCL based on unlawful practices, he does not provide

21  CitiMortgage or CR Title with fair notice as to the claims against them and the basis for relief.

22  *Twombly*, 550 U.S. at 555.  And to the extent that his predicate is his TILA claim, he fails to state a

23  TILA claim, and so his § 17200 claim fails.

24          *ii.  Unfair Practices*

25      Similarly, Mr. Melegrito fails to plead any facts that would support any of the potential tests,

26  especially "unfair practices."  First, he does not allege a violation of a specific constitutional,

27  statutory, or regulatory provision that CitiMortgage or CR Title violated.  Second, because Mr.

28  Melegrito appears to direct this claim at the mortgage broker and not the actual defendants in this

1    case, there is no conduct by CitiMortgage or CR Title that the court can weigh against the severity of

2    the harm Mr. Melegrito suffered.  Third, Mr. Melegrito failed to plead any facts that would indicate

3    that the he suffered a "substantial" injury or that his injury is the type that consumers could not have

4    reasonably avoided.  Therefore, to the extent that Mr. Melegrito relies on unfair practices, his

5    complaint fails to state a claim.

6                *iii. Fraudulent Practices*

7       To state a claim under the fraud prong of § 17200, a plaintiff must allege facts showing that

8    members of the public are likely to be deceived by the alleged fraudulent business practice.  *See*

9    *Morgan v. AT&T Wireless Servs., Inc.*, 177 Cal. App. 4th 1235, 1255 (2009); *Bardin v.*

10   *Daimlerchrysler Corp.*, 136 Cal. App. 4th 1255, 1275 (2006).  Bare conclusions that the "the average

11   consumer" would likely be deceived is insufficient to state a claim under the "fraud prong" of the

12   UCL.  *See id.*

13      Here, Mr. Melegrito's complaint catalogues a series of conclusory statements, none of which

14   provide sufficient factual support that CitiMortgage and CR Title's business practices were likely to

15   deceive members of the public.  As with his other claims, Mr. Melegrito fails to differentiate

16   between defendants, and seems to allege wrongdoing by the mortgage broker who is not a party to

17   this suit.  In short, his complaint does not enable the court to draw reasonable inferences that

18   CitiMortgage's business practices or CR Title's business practices were likely to deceive the general

19   public.

20         *c.  Claims Three and Eleven: Fraud and Intentional Misrepresentation*

21      "The elements of a cause of action for fraud in California are: '(a) misrepresentation (false

22   representation, concealment, or nondisclosure ); (b) knowledge of falsity (or 'scienter'); (c) intent to

23   defraud, *i.e.*, to induce reliance; (d) justifiable reliance; and (e) resulting damage.'"  *Kearns v. Ford*

24   *Motor Co.*, 567 F.3d 1120, 1126 (9th Cir. 2009) (quoting *Engalla v. Permanente Med. Group, Inc.*,

25   15 Cal. 4th 951, 974 (1997)).[6]  Under Federal Rule of Civil Procedure 9(b), a party alleging fraud or

26

27       [6] Mr. Melegrito asserts separate claims for fraud and intentional misrepresentation.
Complaint, ECF No. 1 at ¶¶ 64-81, 136-142.  These claims have the same elements and are
28   interchangeable.  *See* Judicial Counsel of California Civil Jury Instructions § 1900 (2011); *Lim v.*

intentional misrepresentation must satisfy a heightened pleading standard by stating with particularity the circumstances constituting fraud.  Fed. R. Civ. P. 9(b).  Specifically, "[a]verments of fraud must be accompanied by 'the who, what, when, where, and how' of the misconduct charged."  *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (quoting *Cooper v. Pickett*, 137 F.3d 616, 627 (9th Cir.1997)).  Further, "a plaintiff must set forth more than the neutral facts necessary to identify the transaction.  The plaintiff must set forth what is false or misleading about a statement, and why it is false."  *Id.* (quoting *Decker v. GlenFed, Inc.* (*In re GlenFed, Inc. Sec. Litig.*), 42 F.3d 1541, 1548 (9th Cir.1994) (superceded by statute on other grounds)).  A plaintiff must also differentiate his allegations when suing more than one defendant, especially in the context of fraud claims.  *See Destfino*, 630 F.3d at 958.

In this case, Mr. Melegrito fails to differentiate between CitiMortgage and CR Title.  In the portion of his claim that appears to actually be specific to this case, he fails to identify with particularity, who made the allegedly fraudulent statements regarding the trial plan.  Mr. Melegrito then alleges a litany of stock allegations that seem to be unconnected to the specific facts of the case. In these allegations, he again fails to differentiate between defendants.  Therefore, the court dismisses these claims without prejudice.

### d.  Claim Four: Breach of Covenant of Good Faith and Fair Dealing

A plaintiff may assert a claim for breach of the covenant of good faith and fair dealing either in contract law or in tort law.  Because it is unclear from Mr. Melegrito's complaint on which theory he relies, the court will address both.

#### i.  Contract Theory

The covenant of good faith and fair dealing is implied in every contract and prevents one party from "unfairly frustrating the other party's right to receive the benefits" of the contract.  *See, e.g., Guz v. Bechtel Nat. Inc.*, 24 Cal. 4th 317, 349 (2000).  To allege a claim for breach of the covenant of good faith and fair dealing, a plaintiff must allege the following elements: (1) the plaintiff and the

---

*The.TV Corp. Internat.*, 99 Cal. App. 4th 684, 694 (2002).  If Mr. Melegrito elects to file a first amended complaint, he should either plead a claim for fraud or a claim for intentional misrepresentation, but not both.

defendant entered into a contract; (2) the plaintiff did all or substantially all of the things that the contract require him to do or that he was excused from having to do; (3) all conditions required for the defendant's performance had occurred; (4) the defendant unfairly interfered with the plaintiff's right to receive the benefits of the contract; and (5) the defendant's conduct harmed the plaintiff. *See* Judicial Counsel of California Civil Jury Instructions § 325 (2011); *see also Oculus Innovative Sciences, Inc. v. Nofil Corp.*, No. C 06-01686 SI, 2007 WL 2600746, at *4 (N.D. Cal. Sept. 10, 2007).

Mr. Melegrito alleges that "Defendants failed to apply Plaintiff [sic] extra payments to interest that was not legitimately owed by the Plaintiff." Complaint, ECF No. 1, ¶ 84. Moreover, "Defendants unfairly interfered with Plaintiff [sic] rights to receive promised benefits under the contracts by . . . charging unconscionable monthly payments . . . ." *Id.* These allegations – which represent only a sample within this claim – appear to have no connection to the specific facts of this case enunciated in the "Specific Allegations" section. Indeed, this is a word-for-word replica of the same claim Mr. Graham submitted in *Corazon. See Corazon v. Aurora Loan Serv.*, No. C 11-00542 SC, ECF No. 1 at 11-35. Mr. Melegrito essentially alleges claims that are unsupported by any facts articulated in the complaint. Should he decide to file an amended complaint, Mr. Melegrito must assert adequate facts to allow the court to draw reasonable inferences that the defendants are liable for the wrongdoing alleged. *See Iqbal*, 129 S.Ct. at 1949. As Judge Conti already warned, Mr. Graham is under an affirmative obligation to ensure that "the allegations and other factual contentions [in the complaint] have evidentiary support or, if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery." *See Corazon*, 2011 WL 1740099 at *5; Fed. R. Civ. P. 11(b)(3). Thus, the court dismisses this claim in so far as it seeks recovery based on contract law.

### ii. Tort Theory

California law does not generally provide a tort remedy for breach of the implied covenant of good faith and fair dealing in ordinary situations where the parties are a lender and a borrower. *See Dubin v. BAC Home Loans Servicing*, No. C-10-05065 EDL, 2011 WL 794995, at *7-*8 (N.D. Cal. Mar. 1, 2011) (collecting cases). Unless Mr. Melegrito can plead enough facts to permit the court to

UNITED STATES DISTRICT COURT
For the Northern District of California

1  draw a reasonable inference that his relationship with CitiMortgage or CR Title had similar fiduciary

2  characteristics to that of an insured and an insurer, a tort remedy is unavailable.  *See Mitsui Mfr.*

3  *Bank v. Superior Ct.*, 212 Cal. App. 3d 726, 730 (1989).  The characteristics of such a relationship

4  are:

5      (1) the contract must be such that the parties are in inherently unequal bargaining positions; (2)
       the motivation for entering the contract must be a non-profit motivation, i.e., to secure peace of
6      mind, security, future protection; (3) ordinary contract damages are not adequate because (a)
       they do not require the party in the superior position to account for its actions, and (b) they do
7      not make the inferior party "whole"; (4) one party is especially vulnerable because of the type of
       harm it may suffer and of necessity places trust in the other party to perform; and (5) the other
8      party is aware of this vulnerability.

9  *See Denholm v. Houghton Mifflin Co.*, 912 F.2d 357, 361 (9th Cir. 1990) (quoting *Wallis v. Superior*

10 *Ct.*, 160 Cal. App. 3d 1109, 1118 (1984)).

11     Mr. Melegrito's current complaint does not allege sufficient facts to render plausible this claim

12 based in tort law.  Other than conclusory allegations claiming that because CitiMortgage holds the

13 subject loan, CR Title "serves as the Trustee of the Subject Property," and both of the parties

14 "directed the mortgage broker," Mr. Melegrito makes no allegations regarding the five factors

15 necessary for a special relationship.  Therefore, to the extent that Mr. Melegrito asserts a claim in

16 tort for a violation of the breach of the covenant of good faith and fair dealing, the court dismisses

17 his claim.

18         *e. Claims Five and Nine: Breach of Fiduciary Duty and Negligence*

19     Mr. Melegrito sues CitiMortgage and CR Title for breach of fiduciary duty and negligence.

20 Complaint, ECF No. 1, ¶ 86-92.  Under California law, lenders do not owe borrowers a duty of care

21 unless their involvement in the loan transaction exceeds the scope of their "conventional role as a

22 mere lender of money."  *See Nymark v. Heart Fed. Savings & Loan Assn.*, 231 Cal. App. 3d 1089,

23 1095-96 (1991) (citations omitted).  To determine whether the institution exceeded the scope of its

24 conventional role as a lender of money, courts must balance the following factors:

25     [1] the extent to which the transaction was intended to affect the plaintiff, [2] the foreseeability
       of harm to him, [3] the degree of certainty that the plaintiff suffered injury, [4] the closeness of
26     the connection between the defendant's conduct and the injury suffered, [5] the moral blame
       attached to the defendant's conduct, and [6] the policy of preventing future harm.

27

28 *Id.* at 1098.

1    Here, Mr. Melegrito asserts that CitiMortgage and CR Title owe him a fiduciary duty because

2    they own and service the loan at issue in this case.  Complaint, ECF No. 1, ¶ 87.  This is contrary to

3    California law.  As stated in *Nymark*, CitiMortgage and CR Title do not owe a duty to Mr. Melegrito

4    based solely on the fact that CitiMortgage owns the loan and CR Title services the loan.  *See*

5    *Nymark*, 231 Cal. App. 3d at 1095-96.

6    Mr. Melegrito then asserts that CitiMortgage and CR Title owe him a fiduciary duty because

7    they "directed the mortgage broker, who has a fiduciary duty to Plaintiff."  Complaint, ECF No. 1 at

8    19, ¶ 88.  This general assertion is insufficient to create a duty of care.  *See De Jose*, 2011 WL

9    1539656 at *10 (dismissing a nearly identical claim filed by Mr. Graham); *Nunez*, 2011 WL

10   1058545 at *3.  Mr. Melegrito does not identify the broker or state any facts to show that

11   CitiMortgage or CR Title exceeded the scope of their "conventional role as a mere lender of

12   money."  *See Nymark*, 231 Cal. App. 3d at 1095-96.  Consequently, the court dismisses his claims

13   for breach of fiduciary duty and negligence.

14       *f.  Claim Six: Breach of Loan Contract*

15   To state a claim for breach of contract, a plaintiff must show the following: (1) that a contract

16   existed; (2) the plaintiff performed his duties or was excused from performing his duties under the

17   contract; (3) the defendant breached the contract; and (4) the plaintiff suffered damages as a result of

18   that breach.  *See First Commercial Mortgage Co. v. Reece*, 89 Cal. App. 4th 731, 745 (2001); *see*

19   *also De Jose*, 2011 WL 1539656 at *8 (dismissing a similar complaint filed by Mr. Graham).  "Facts

20   alleging a breach, like all essential elements of a breach of contract cause of action, must be pleaded

21   with specificity."  *See Levy v. State Farm Mut. Auto. Ins. Co.*, 150 Cal. App. 4th 1, 5 (2007).

22   Here, much like Mr. Melegrito's claim for a breach of the covenant of good faith and fair

23   dealing, the conclusory facts that he alleges in this claim appear to be wholly inapplicable to the

24   particular facts of this case.  He makes general assertions such as "Defendants failed to accurately

25   credit homeowners' payments to their accounts" without any reference to the facts at issue in this

26   case.  Complaint, ECF No. 1 at ¶ 99.  Mr. Melegrito cannot make general assertions divorced from

27   the facts of his case.  Instead, he must plead facts supporting all of the elements of a claim for breach

28   of contract.  *Levy*, 150 Cal. App. 4th at 5.  Accordingly, the court dismisses his breach of contract of

UNITED STATES DISTRICT COURT
For the Northern District of California

1    claim.

2           *g. Claim Seven: Violation of California Civil Code § 2923.5*

3        Mr. Melegrito alleges that unspecified defendants failed to file a "proper declaration"

4    accompanying the Notice of Default and thus "clouded title."  Complaint, ECF No. 1 at 21-22, ¶

5    103-110.  It is unclear whether he claims that the unspecified defendants failed to file a declaration

6    in the first place or whether the declaration was substantively inadequate.  *See Nunez*, 2011 WL

7    1058545 at *4 (observing the same deficiency in another complaint filed by Mr. Graham).  The court

8    took judicial notice of the Notice of Default and the accompanying declaration.  *See supra* at n.3;

9    Notice of Default, ECF No. 4-2 at 30-32, Ex. B.  Mr. Melegrito did not object and there is no reason

10   to question the accuracy of the document.  In so far as he alleges substantive deficiencies in the

11   declaration, Mr. Melegrito must plead some facts about how the declaration is deficient.

12         *h. Claim Eight: Promissory Estoppel*

13       Under California law, "[a] promise which the promisor should reasonably expect to induce

14   action or forbearance on the part of the promisee or a third person and which does induce such

15   action or forbearance is binding if injustice can be avoided only by enforcement of the promise."

16   *See Kajima/Ray Wilson v. Los Angeles Cnty. Metro. Transp. Auth.*, 23 Cal. 4th 305, 310 (2000).

17   Promissory estoppel is an equitable doctrine whose remedy may be limited "as justice so requires."

18   *See id.*  The elements of promissory estoppel are: "(1) a clear promise; (2) reasonable reliance; (3)

19   substantial detriment; and (4) damages 'measured by the extent of the obligation assumed and not

20   performed.'"  *See Errico v. Pacific Capital Bank, N.A.*, 753 F. Supp. 2d 1034, 1048 (N.D. Cal. 2010)

21   (citing and quoting *Poway Royal Mobilehome Owners Ass'n. v. City of Poway*, 149 Cal. App. 4th

22   1460, 1470 (2007)).

23       Mr. Melegrito alleges that unspecified defendants promised that they would process his

24   application for a loan modification if he made all of the payments under the trial plan, he made the

25   payments under the plan, and the defendants denied him a loan modification by wrongfully claiming

26   that he failed to make all of the payments on time.  Complaint, ECF No. 1 at ¶¶ 111-120.  He also

27   claims that he was "harmed by breach of this promise."  *Id.* at ¶ 120.

28       As with all of his claims, Mr. Melegrito does not specify which defendant he alleges made and

**UNITED STATES DISTRICT COURT**
**For the Northern District of California**

breached the promise.  Additionally, he fails to identify a clear promise to grant the loan

modification.  As CitiMortgage and CR Title correctly argue in their motion to dismiss, "An

agreement to modify a contract that is subject to the statute of frauds is also subject to the statute of

frauds."  *See Secrests v. Security Nat. Mortg. Loan Trust 2002-2*, 167 Cal. App. 4th 544, 553 (2008).

An "agreement by which a lender agreed to forbear from exercising the right of foreclosure under a

deed of trust securing an interest in real property comes within the statute of frauds."  *Id.* at 547.

Thus, the alleged promise to modify Mr. Melegrito's original loan is subject to the statute of frauds.

*Id.*  The complaint, however, points only to oral representations by unspecified defendants that they

would grant Mr. Melegrito a loan modification at an unspecified time in the future if he ignored both

of the trial plans sent to him and instead made payments of $1,480 per month.  Complaint, ECF No.

1 at ¶¶ 39-41, 111-120.  Such conclusory allegations about an unspecified individual agreeing to a

loan modification with unspecified terms at some point in the unspecified future are insufficient to

permit the court to reasonably infer that CitiMortgage or CR Title made a clear promise to modify

Mr. Melegrito's loan.  *See Dooms v. Federal Home Loan Mortg. Corp.*, No. CV F 11–0352 LJO

DLB, 2011 WL 1232989, at *10 (E.D. Cal. Mar. 31, 2011) (dismissing a promissory estoppel claim

where the plaintiff failed to specify (1) a particular representative who made the promise, (2) the

terms of the loan modification, and (3) consideration offered in return for the promise).  As a result,

the court dismisses without prejudice Mr. Melegrito's claim for promissory estoppel.

    *i. Claim Ten: Predatory Lending*

    California Financial Code §§ 4970, *et. seq.*, prohibits predatory lending practices of "covered

loans."  It defines "covered loans" as:

> (b) "Covered loan" means a consumer loan in which the original principal balance of the loan does not exceed the most current conforming loan limit for a single-family first mortgage loan established by the Federal National Mortgage Association in the case of a mortgage or deed of trust, and where one of the following conditions are met:
>
> (1) For a mortgage or deed of trust, the annual percentage rate at consummation of the transaction will exceed by more than eight percentage points the yield on Treasury securities having comparable periods of maturity on the 15th day of the month immediately preceding the month in which the application for the extension of credit is received by the creditor.
>
> (2) The total points and fees payable by the consumer at or before closing for a mortgage or deed of trust will exceed 6 percent of the total loan amount.

C 11-01765 LB
ORDER DISMISSING COMPLAINT

UNITED STATES DISTRICT COURT
For the Northern District of California

1   Cal. Fin. Code § 4970(b).  Here, the court took judicial notice of the Fannie Mae Historical

2   Conventional Loan Limits.  *Supra* at 2 n.3.  According to that table, in 2007 when Mr. Melegrito

3   received the loan, the historical conventional loan limit was $417,000 for a single unit.  *See* Fannie

4   Mae Historical Conventional Loan Limits, ECF No. 4-2 at 37, Ex. D.  Mr. Melegrito received a loan

5   worth $560,000.  Complaint, ECF No. 1 at ¶ 32.  Mr. Melegrito's loan therefore exceeds the amount

6   of the historical conventional loan limit and is not covered by California Financial Code §§ 4970, *et.*

7   *seq.*  Mr. Melegrito makes no argument in his opposition to the contrary.  Instead, he simply

8   reiterates that the motion to dismiss should be denied because he sufficiently pleaded this claim.  *See*

9   Opposition, ECF No. 8 at 17.  The court disagrees.  The facts do not and cannot state a claim.

10          *j.  Claim Twelve: Violation of California Civil Code § 1632*

11          California Civil Code § 1632 provides that "[a]ny person engaged in a trade or business who

12   negotiates primarily in Spanish, Chinese, Tagalog, Vietnamese, or Korean, orally or in writing,"

13   must "deliver to the other party to the contract or agreement . . . a translation of the contract or

14   agreement in the language in which the contract or agreement was negotiated" prior to execution of

15   the contract.  Loans for real property that are negotiated by brokers and are for the "use primarily for

16   personal, family or household purposes" are subject to § 1632's strictures.  *See id.* § 1632(b)(4); *see*

17   *also ING Bank, fsb v. Ahn*, 717 F. Supp. 2d 931, 933 (N.D. Cal. 2010).

18          Mr. Melegrito's claim is insufficient on multiple levels.  First, the statue of limitations for a

19   violation of § 1632 is one year.  *See, e.g.,* Cal. Civ. Code §§ 340(a), 1632(k); *Castaneda v. Saxon*

20   *Mortg. Services, Inc.*, 687 F. Supp. 2d 1191, 1200 (E.D. Cal. 2009).  Mr. Melegrito filed suit more

21   than three years after the alleged violation and he has pleaded no facts to support equitable tolling of

22   the statute.  Second, the claim largely pertains to actions by the insurance broker who is not a party

23   to this suit.  Even if the broker was a party to this suit, the claim does not differentiate between

24   defendants.  Third, Mr. Melegrito pleads no facts to demonstrate that he negotiated the contract at

25   issue in "Spanish, Chinese, Tagalog, Vietnamese, or Korean" either orally or in writing.  As a result,

26   the court dismisses this claim.

27                              **V.  CONCLUSION**

28          The court **GRANTS** CitiMortgage and CR Title's motion to dismiss.  Motion to Dismiss, ECF

1    No. 4.  Mr. Melegrito's complaint is dismissed with leave to amend.

2        This disposes of ECF No. 4.

3        **IT IS SO ORDERED.**

4    Dated: June 6, 2011

5                                                    _____
                                                     LAUREL BEELER
6                                                    United States Magistrate Judge

UNITED STATES DISTRICT COURT
For the Northern District of California